Joseph T. MORROW, Plaintiff,

v.

Barbara Welch SUDLER, Individually; William H. Hornby, Individually; and The State Historical Society of Colorado, Defendants.

Civ. A. No. 80–C–462.

United States District Court, D. Colorado.

Nov. 24, 1980.

On Motion to Reconsider Dec. 9, 1980.

Modified Order on Motion to Reconsideration Dec. 31, 1980.

---

David E. Engdahl, Engdahl & Renzo, P. C., Denver, Colo., for plaintiff.

Jo Ann Soker, Asst. Atty. Gen., Nancy Connick, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

### I. *Posture of the Case.*

THIS MATTER is before the Court on the defendants' motion to dismiss. Defendants are the State Historical Society of Colorado (the "Society") and two individuals, Barbara Welch Sudler and William H. Hornby. Plaintiff Joseph T. Morrow, suing under 42 U.S.C. § 1983, seeks redress for dismissal from his post as Curator of Material Culture for the Society. He alleges that the defendants, acting under color of state law, have deprived him of liberty and property protected by the Fourteenth Amendment.

Defendants argue that Morrow's claims are barred by the Eleventh Amendment. Defendants also argue that Section 1983 affords Morrow no relief against them since they are not "persons" within the meaning of that section. Lastly, they argue that Morrow has failed to state a claim for relief against any of them.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admission, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well estab-

lished that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## II. *Eleventh Amendment Immunity.*

The Eleventh Amendment provides:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Although the Eleventh Amendment, read literally, does not seem to bar one from suing the state in which he is a citizen, it has been construed to protect states from federal court actions by their own citizens. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Therefore, the fact that Morrow is a citizen of Colorado does not prevent the defendants from pleading Eleventh Amendment immunity.

The simplest way for a plaintiff to confront the Eleventh Amendment bar is to name the State as a defendant. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Morrow has not here named the State of Colorado as a defendant. Nor has he named any of the three primary branches of the state government as defendants. *Cf. Coopersmith v. Supreme Court, State of Colorado,* 465 F.2d 993 (10th Cir. 1972). Our research has found nothing to indicate that the State of Colorado has cloaked the defendants with either its sovereign immunity or its Eleventh Amendment immunity. *Cf. Prebble v. Brodrick,* 535 F.2d 605 (10th Cir. 1976).

■ The Supreme Court has recently held that when the State itself is not a named party, the essential inquiry for purposes of the Eleventh Amendment is whether the relief sought against the defendants involves the awarding of funds which "must inevitably come from the general revenues of the (State)." *Edelman v. Jordan,* 415 U.S. at 665, 94 S.Ct. at 1356. An award which must be paid from the State's general revenues amounts in essence to an award of damages against the State, and, therefore, it is barred by the Eleventh Amendment. *Id.*

■ Morrow seeks compensatory damages, reinstatement, back pay, attorney's fees, and punitive damages against all the defendants. Sudler and Hornby are named in their individual capacities to answer for acts committed under color of state law. Any recovery of damages against them would have to be paid from their own funds, because their status as state officials does not provide them Eleventh Amendment immunity. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Of course their having acted as state officials is a necessary element of Morrow's claim against them, since Section 1983 relief is available only where the act complained of is done under color of state law. Nevertheless, Sudler and Hornby are not shielded from personal liability by the Eleventh Amendment.

■ The defendant Society's status poses a more difficult problem. It is not shielded from a judgment awarding reinstatement. Reinstatement, being prospective injunctive relief, does not require any payment from the State treasury. Under the *Edelman* test, a claim for reinstatement is not barred by the Eleventh Amendment.

Morrow's claims for monetary relief, however, may be barred by the Eleventh Amendment. This depends on whether funds to pay a judgment for damages against the Society necessarily would come from the State's general revenues.

The Society occupies a unique status under Colorado law. Though first incorporated as a private entity, it was "adopted" by the State in the early part of this century. Presently, it is treated as a state educational institution. § 24–80–201, C.R.S. 1973. Subject to Article XII section 13 of the State Constitution, it has authority to appoint its employees and fix their salaries.

§ 24–80–204, C.R.S. 1973. The Society may accept gifts. § 24–80–206, C.R.S. 1973. Funds received as gifts must be kept separate for the sole use of the Society. § 24–80–207, C.R.S. 1973. These statutes, considered in light of the Society's corporate capacity to sue or be sued as an independent entity, indicate that damages awarded against the Society could be paid out of funds not derived from the State.

However, the Society president is required to make an annual report to the Governor and the General Assembly. § 24–80–203, C.R.S. 1973. It receives some of its funding from the State. § 24–80–211, C.R.S. 1973. Title to any property acquired in any way by the Society, including donations, is vested in the State. § 24–80–209, C.R.S. 1973. The Society holds, as trustee for the State, not only funds appropriated to it by the State but also funds and property it receives as donations. § 24–80–202, C.R.S. 1973.

The modern application of the Eleventh Amendment may be seen in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). There, the Supreme Court held that the Eleventh Amendment barred federal court jurisdiction to award retrospective damages against a state agency when those damages had to be paid from state general revenues. The Eleventh Amendment thus protects state funds in order to prevent the federal courts from interfering with a state's internal fiscal operations. In discussing the public aid benefits at issue in *Edelman*, the Court said:

"[W]here the State has a definable allocation to be used in the payment of public aid benefits, and pursues a certain course of action such as the processing of applications within certain time periods as did Illinois here, the subsequent ordering by a federal court of retroactive payments to correct delays in such processing will in- variably mean that there is less money available for payments for the continuing obligations of the public aid system." 415 U.S. at 666, n. 11, 94 S.Ct. at 1357, n. 11.

In the instant case, some of the Society's revenues come from state appropriations, and some from private donations. The *Edelman* doctrine clearly prevents any judgment of this Court from reaching funds appropriated by the State. However, funds received by the Society from donors obviously are not derived from state revenues. Though title to these donated funds is held by the State, they are set aside for the sole use of the Society and kept in a separate account. § 24–80–207, C.R.S. 1973. A judgment of this Court awarding damages against the Society, but limiting the source for collecting those damages to the funds held in the separate account, will not impair the State's budgetary decisions. Nor will such a judgment affect any other state agency.

Unlike typical state agencies, the Society is free to strike out on its own to raise funds from private benefactors to meet obligations. Colorado taxpayers will not see part of their tax money taken away from other state programs to make up for funds used to pay any potential judgment of this Court. Consequently, the defendants' motion to dismiss all claims against them on the grounds that they are shielded by the Eleventh Amendment is denied. However, if any judgment should be awarded against the Society it will have to be collected from non-state funds.

### III. *Section 1983.*

Defendants also move to dismiss on the grounds that none of them are "persons" within 42 U.S.C. § 1983.[1] The statute creates a claim for relief against any "person" acting under color of state law who causes deprivation of another's civil rights.

---

1. Section 1983 provides in part:

"Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983 (as amended 1979).

Morrow has alleged that Sudler and Hornby violated his Fourteenth Amendment right to procedural due process by terminating his employment as they did. Defendants argue that Sudler and Hornby are not "persons" within the meaning of Section 1983 since they were acting in their official capacities as officers and employees of the Society. This defense has no merit. Morrow's Section 1983 claim must allege that the defendant deprived him of civil rights while acting under color of state law. Therefore, the defendants' motion to dismiss Morrow's claims against Sudler and Hornby on the grounds that they are not "persons" within Section 1983 is denied.

As to the Society's status as a "person" under Section 1983, neither the plaintiff nor the defendants have cited any direct authority on this question. Morrow argues that two recent Supreme Court decisions, *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), should be read to include the Society within the group of municipal corporations that may be sued as "persons" under Section 1983.

The *Monell* case held only that municipalities and local government units not protected by Eleventh Amendment immunity could be sued as "persons" under Section 1983. 436 U.S. at 690, n. 54, 98 S.Ct. at 2035, n. 54. *Owen* decided only the question whether municipalities and local government units were entitled to the defense of qualified immunity for the good faith actions of their officers. *See* 445 U.S. at 624–25, 100 S.Ct. at 1402. Since the Society is not limited to servicing one area of Colorado, but is by legislative declaration a State educational institution (§ 24–80–201, C.R.S. 1973), it is not a municipality or a local governmental entity. Therefore,

neither of these recent Supreme Court cases constitutes direct authority for holding that the Society is a "person" within Section 1983.

However, in *Brogan v. Wiggins School District*, 588 F.2d 409 (10th Cir. 1978), the Tenth Circuit regarded a claim for injunction under Section 1983 as properly pleaded against the Colorado State Board of Education. 588 F.2d at 411. Therefore, *Brogan* is authority for the proposition that a state agency can be a "person" under Section 1983.[2]

Here the Society is a state educational institution, and a state agency. Under *Brogan*, the Society is a "person" for purposes of Section 1983.

The unique status of the Society as a corporation "adopted" by the State of Colorado also supports a ruling that the Society is a "person" within Section 1983. The Society was originally incorporated as a private entity, and retains the indefinite life span of any general corporation. The Society would continue to exist even if the Colorado General Assembly should repeal the statutes relating to it. (§ 24–80–201, *et seq.*, C.R.S. 1973). It would merely revert to its former status as a solely private entity. The action of the Colorado General Assembly in "adopting" the Society as a state educational institution may be analogized to the appointment of a natural person to state office. The status of the person appointed changes, but his or her existence as a person—including capacity to sue or be sued—does not depend on the act of appointment. For these reasons, the defendants' motion to dismiss all claims against the Society on the ground that it is not a "person" within Section 1983 is denied.

IV. *Failure to State a Claim.*

Defendants also argue that all claims against them should be dismissed because

---

2. The Tenth Circuit approved summary judgment against the plaintiff's damage claims in *Brogan.* The Court apparently, though not expressly, relied on the Eleventh Amendment in doing so. *See* 588 F.2d at 411. The Tenth Circuit's approval of the claim for injunction in *Brogan* cannot be explained by some imagined

distinction between Section 1983 "persons" that depends on whether damages or injunctive relief is sought. *See City of Kenosha v. Bruno*, 412 U.S. 507, 513, 93 S.Ct. 2222, 2226, 37 L.Ed.2d 109 (1972) (decided six years before *Brogan*).

Morrow has failed to state a claim against any of them.

■ Morrow claims that in the course of his dismissal, Sudler made unfounded, disparaging remarks to third persons about his professional competence, and thus impaired his ability to find other, similar employment. Under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), this is a sufficient allegation that Morrow was deprived of a liberty right without notice and opportunity to be heard. *See Paul v. Davis*, 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

■ Morrow further asserts that he was deprived of property without due process. He advances two theories supporting his alleged property right. First he alleges that § 23–10–101, *et seq.*, C.R.S. 1973, requires that he be given a hearing before termination. This statute, however, gives Morrow a right to a hearing only if he is a faculty member at a *post-secondary* educational institution. See, § 23–10–102(3), C.R.S. 1973. Since the Society is not "post-secondary,"[3] Morrow's employment was not protected by section 23–10–101, *et seq.*

■ Morrow's second theory is based upon his allegation that the Society promised that it would dismiss him only for cause. This is a sufficient allegation of an "understanding" that Morrow had a continued right to employment. *See Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ Morrow has alleged that Sudler decided that he should be terminated as the Society's Curator of Material Culture, and sought ratification of her decision from the Society's Board of Directors. He has also alleged that Hornby wrote a letter denying his request for a post-termination hearing. These allegations sufficiently plead acts of the individual defendants causing deprivation of Morrow's rights.[4]

Morrow also attempts to allege that the Society deprived him of liberty and property. In *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court said that Section 1983 actions against government entities must allege some act of the entity that caused the deprivation. The discussion in *Monell* focused on an allegation that the government entity had itself adopted or pursued a policy that caused a deprivation of constitutional rights. The Supreme Court approved such an allegation as sufficient to state a claim. 436 U.S. at 690–91, 98 S.Ct. at 2035–36.

■ Morrow has not alleged that any policy, formal or informal, adopted or followed by the Society has caused him to be deprived of liberty or property. Nor has he alleged that the Society itself committed any "act" causing the deprivations. Instead, he apparently asserts that the Society is liable on a theory of respondeat superior. That assertion fails to state a claim for relief against the Society. *See* 436 U.S. at 691, 98 S.Ct. at 2036. Defendants' motion to dismiss the claims against the Society for failure to state a claim for relief is, therefore, granted.

The defendants' motion to dismiss the § 23–10–101, *et seq.* claim, asserting statutory entitlement to a property interest in the job, is also granted upon the ground that it fails to state a claim for relief. Their motion to dismiss all other claims against Sudler and Hornby must be denied.

---

**3.** The Society apparently has no educational prerequisites. Use of the Society's facilities is not limited to persons who have completed a secondary education. Therefore, the Society cannot be a "post-secondary educational institution."

**4.** Hornby's argument that denial of a hearing *after* termination caused no deprivation to Morrow is utterly without merit. The Due Process Clause of the Fourteenth Amendment protects the right to notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). *Fuentes* does not limit "meaningful" hearings to prior hearings. A hearing after the Board of Directors' decision to terminate Morrow would have given the Board the chance to reconsider its decision.

## ON MOTION TO RECONSIDER

THIS MATTER is before the Court on plaintiff Joseph T. Morrow's motion to reconsider this Court's earlier dismissal of Morrow's claims against the State Historical Society of Colorado (the "Society").

 Further research, as well as another review of the allegations in the complaint, reveals that Morrow has sufficiently alleged a claim for relief against the Society under 42 U.S.C. § 1983. *See Owen v. City of Independence,* 445 U.S. 622, 653 n. 37, 655 n. 39, 100 S.Ct. 1398, 1416 n. 37, 1418 n. 39, 63 L.Ed.2d 673 (1980); *Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 405 n. 29, 99 S.Ct. 1171, n. 29, 59 L.Ed.2d 401 (1979). Under these cases, he has pleaded a claim for relief by alleging that the Society's Board of Directors, by terminating his employment without cause, denied him property without due process.

The Court remains convinced, however, that Morrow has failed to allege a claim for relief against the Society for denial of liberty without due process. The complaint, read in the light most favorable to Morrow, alleges only that Barbara Welch Sudler made disparaging remarks which could affect Morrow's ability to find future employment. There is no allegation that the Society adopted or promulgated Sudler's statements, nor any allegation that the Society itself did anything that denied Morrow liberty without due process of law.

Accordingly, this Court's prior order is modified to read:

IT IS ORDERED that the plaintiff's claim for relief against the State Historical Society of Colorado based on denial of liberty without due process as set out in paragraphs 12, 14, 15, 21, 22, and 31 of the Complaint is dismissed for failure to state a claim upon which relief can be granted.

It is further ORDERED that the plaintiff's claims against Sudler and Hornby based on § 23–10–101, *et seq.,* C.R.S. 1973, as set out in paragraphs 10 and 28 of the Complaint are dismissed for failure to state a claim upon which relief can be granted.

In all other respects, the defendants' Motion to Dismiss is denied.

## MODIFIED ORDER ON MOTION TO RECONSIDER

THIS MATTER is before the Court on the defendants' request for clarification of this Court's Order on Motion to Reconsider.

In drafting the Order on Motion to Reconsider, language dismissing plaintiff Joseph T. Morrow's claim for relief against the State Historical Society of Colorado based on § 23–10–101, *et seq.,* C.R.S. 1973, was inadvertently omitted. This claim had been dismissed by this Court's Order of November 24, 1980.

The defendants also ask this Court to enter an Order dismissing Morrow's claim against defendant William H. Hornby for denial of liberty without due process of law. Such action is unnecessary since Morrow makes no claim for relief against Hornby for denial of liberty without due process.

Accordingly, this Court's prior order is modified to read;

IT IS ORDERED that the plaintiff's claim for relief against the State Historical Society of Colorado based on denial of liberty without due process as set out in paragraphs 12, 14, 15, 21, 22, and 31 of the Complaint is dismissed for failure to state a claim upon which relief can be granted.

It is further ORDERED that the plaintiff's claims against Sudler, Hornby, and the State Historical Society of Colorado based on § 23–10–101, *et seq.,* C.R.S. 1973, as set out in paragraphs 10 and 28 of the Complaint are dismissed for failure to state a claim upon which relief can be granted.

In all other respects, the defendants' Motion to Dismiss is denied.