Dr. Richard G. RIVAS, Plaintiff,

v.

The STATE BOARD FOR COMMUNITY COLLEGES AND OCCUPATIONAL EDUCATION, and Ellin R. Mrachek, Angelo M. Daurio, Stephen J. DeJong, Ross Forney, Thomas T. Grimshaw, Richard O. Jones, Gwendolyn A. Thomas, Fred W. Valdez, Jr., Kirk Wagner, members of the State Board for Community Colleges and Occupational Education; the Pikes Peak Community College Council and Norman Pledger, Betty Dyatt, Mildred Guy, Jerry Jones, James Lunghofer, members of the Pikes Peak Community College Council; Donald W. McInnis, President of Pikes Peak Community College, Defendants.

Civ. A. No. 79–K–1520.

United States District Court, D. Colorado.

June 26, 1981.

Larry F. Hobbs, Denver, Colo., for plaintiff.

Carol M. Welch, Hall & Evans, Jo Ann Soker, Asst. Atty. Gen., Denver, Colo., for defendants.

## ORDER

KANE, Judge.

This is a civil rights action under Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C.

§ 1983 and § 1985. Plaintiff alleges that from July 1, 1977 to the present, defendants, jointly and severally, have discriminated against plaintiff because of his race in their hiring and other practices. Defendants have moved to dismiss portions of plaintiff's claims on numerous grounds. For the reasons that follow the motion is granted in part and denied in part.

## TITLE VII CLAIMS

■ Defendants contend that the only employer, as defined by 42 U.S.C. § 2000e(b) is the State Board for Community Colleges and Occupational Education (State Board) and consequently, all of the other defendants should be dismissed. it is clear that the hiring power at the state community colleges ultimately rests with the State Board rather than the College Council. The board has exclusive hiring authority and any hiring decision is subject to its approval. *Van Pelt v. The State Board for Community Colleges and Occupational Education*, 195 Colo. 316, 577 P.2d 765, 771 (1978). This duty is included in the board's general powers, granted in C.R.S. § 23–60–202(1). Absent legislative authorization it cannot be delegated to the College Council. *Id.* C.R.S. § 23–60–206(2)(d) provides that the College Council's duties include confirming appointments to the professional staff. However, this provision establishing the procedure for a college's final action in the hiring process, does not remove the board's ultimate authority to approve or disapprove the College Council's hiring decision. *Id.*

■ Liberal construction is to be given to the definition of employer as defined by the Civil Rights Acts. *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir. 1977); *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.1973). For Title VII purposes, it is not necessary for individuals or the council to have total control or ultimate authority over hiring decisions. If the involvement is sufficient and necessary to the total employment process, the individual is considered an employer. *Curran v. Portland Super. School Comm.*, 435 F.Supp.

1063 (D.Me.1977). *See also, Vanguard Justice Society Inc. v. Hughes*, 471 F.Supp. 670 (D.Md.1979). Since the council confirms appointments to the staff, it is clearly involved in the employment process and is an employer for Title VII purposes.

■ However, defendants also contend that the College Council is not a body corporate, has not been given the power to sue or be sued, and therefore cannot be a defendant in this action. The council's capacity to be sued is determined by state law. *Byron v. University of Florida*, 403 F.Supp. 49, 54 (D.Fla.1975); Fed.R.Civ.P. 17(b). Colorado law does not endow the council with the authority to be sued in its own name, *see* C.R.S. § 23–60–206, contrary to other bodies within the higher education system. *See, e. g.*, C.R.S. §§ 23–60–104 (State Board), 23–30–102 (State Board of Agriculture), 23–41–101(Colorado School of Mines). Therefore, the claims against the council, but not its members, *Byron v. University of Florida*, 403 F.Supp. at 52–3, must be dismissed.

■ Defendants also claim that plaintiff's Title VII claims are barred because plaintiff failed to pursue his administrative remedies in a timely manner. This action was filed on November 7, 1979. Plaintiff was issued right to sue letters on September 21, 1979 and August 8, 1979. The period for filing private suits under Title VII runs from the aggrieved person's receipt of the commissioner's letter of notice. *Plunkett v. Roadway Express*, 504 F.2d 417 (10th Cir. 1974). *See also, Melendez v. Singer-Friden Corp.*, 529 F.2d 321, 323 (10th Cir. 1976); *Whatley v. Skaggs Co., Inc.*, 502 F.Supp. 370, 376 (D.Colo.1980). Since plaintiff's first letter was postmarked August 11, 1979,[1] the filing was timely.

■ Defendants also contend that plaintiff is barred from pursuing any claims arising out of actions occurring before March 6, 1978 because he has not pursued his administrative remedies in a timely fashion. However, a plaintiff who alleges continuing violations of Title VII may file

1. See Supplemental Memorandum in Opposition to Defendant's Motion to dismiss, P. 3.

charges with the EEOC at any time during which the alleged continuing violation has taken place. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir. 1975). Failure to promote, which plaintiff alleges, is viewed as ongoing, while failure to hire is viewed as a discrete act. *Id.; Dumas v. Town of Mt. Vernon, Ala.*, 612 F.2d 974, 977 (5th Cir. 1980). Allegations of continuing discrimination and the existence of a policy of discrimination are sufficient to constitute a timely filing with the agency. *Egelson v. State University College at Genesco*, 535 F.2d 752, 755 (2nd Cir. 1976). Plaintiff may be unable to demonstrate the existence of a policy of discrimination, but this cannot be resolved on a motion to dismiss, *Id.* Therefore the motion to dismiss claims arising prior to March 6, 1978 is denied.

 Finally the defendants move to dismiss any Title VII claims for damages other than the equitable relief of back pay and other benefits because such damages cannot be recovered in Title VII actions. In this circuit, compensatory or punitive damages, except back pay are unavailable in Title VII actions. *Alexander v. Consolidated Freightways Co.*, 421 F.Supp. 450 (D.Colo. 1976). *See also, e. g., Pearson v. Western Electric Co., Etc.*, 542 F.2d 1150, 1152 (10th Cir. 1976); *Curran v. Portland Super. School Comm.*, 435 F.Supp. at 1078. Therefore any claims for punitive or compensatory damages under Title VII are dismissed. This does not preclude plaintiff from pursuing these claims under other sections of the Civil Rights Act.

## § 1985 CLAIMS

Defendants contend that plaintiff's complaint lacks factual allegations with respect to both the formation and existence of a conspiracy and overt acts by the defendants in pursuance thereof. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), cited by defendants in support of this contention, held that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action. The conspiracy must aim at a deprivation of the equal enjoyment of rights secured by the law to all. The complaint must assert, *inter alia*, that one or more of the conspirators did or caused to be done, any act in furtherance of the object of the conspiracy, whereby another was injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States.

In *Harrison v. Brooks*, 519 F.2d 1358 (1st Cir. 1975), the court found that the requirement that the discrimination be "class-based" is not satisfied by an allegation that there was a conspiracy which affected the interests of class of persons similarly situated with the plaintiffs. Rather the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious. Other courts, including the 10th Circuit have followed this reasoning. *See Lessman v. McCormick*, 591 F.2d 605 (10th Cir. 1979); *Marty's Adult World of New Britain, Inc. v. Guida*, 453 F.Supp. 810 (D.Conn.1978).

 The complaint alleges that the defendants have failed to promote plaintiff to positions for which he is qualified, hired disproportionately low numbers of minority applicants for administrative positions, used hiring procedures which have created statistical imbalances and perpetuated the effects of past discrimination, all because of national origin or race. Thus, there is no doubt that the alleged discrimination is based on national origin and motivated by a prohibited animus which brings it within § 1985(3). However, the complaint does not clearly allege acts in furtherance of the object of the conspiracy or any agreement on the part of the alleged conspirators. The remedy in these circumstances is to grant leave to amend rather than to dismiss. Therefore, defendants motion to dismiss on the § 1985 claims on this ground is granted without prejudice and plaintiff is granted ten days leave to amend in conformity with this opinion.

Defendants also contend that Colorado law vests the sole and exclusive authority to

establish policies pertaining to community colleges exclusively in the State Board, C.R.S. § 23–60–202(j) and § 23–62–105, and therefore inclusion or naming of agents of the State Board does not satisfy the statutory requirement of "two or more persons." Precedent on this point is mixed and the Tenth Circuit has not made a definitive statement. The common thread, however, throughout the various decisions is apparent: a conspiracy does not exist among a business entity and its employees where the employees act within the scope of their employment and without inconsistent personal motivations. *Coley v. M&M Mars, Inc.*, 461 F.Supp. 1073 (D.Ga.1978). In *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972) the court held that if the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute a conspiracy as contemplated by 42 U.S.C. § 1985(3). *See also, Herrmann v. Moore*, 576 F.2d 453 (2nd Cir.), cert. denied, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66 (2nd Cir.), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181 (8th Cir. 1974); *Lieberman v. Grant*, 474 F.Supp. 848 (D.Conn.1979), aff'd, 630 F.2d 60 (2nd Cir. 1980). A college cannot conspire with itself anymore than a person or corporation can. *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264, 1276 (D.Pa.1976).

Several cases, however, have viewed the matter differently. In *Rackin v. University of Pennsylvania*, 386 F.Supp. 992, 1005 (D.Pa.1974), plaintiff was denied tenure, ousted from her department, and, contrary to university policy, granted tenure in a department outside of her specialty allegedly because of her sex. Plaintiff also alleged many continuing instances of discrimination and harassment by the alleged conspirators. The court found that these allegations comprised much more than "essentially a single act of discrimination by a single business entity" and therefore *Dombrowski* was inapplicable. *See also, Jackson v. University of Pittsburgh*, 405 F.Supp. 607 (D.Pa.1975). These two cases have been read as authority for the proposition that allegations of continual harassment at the hands of individual employers are sufficient to survive dismissal because, in the backdrop of racial discrimination, such allegations express the likelihood that the employees were motivated by a personal racial bias and were not acting out of concern for the best interests of their employer, *Coley v. M&M Mars, Inc.*, 461 F.Supp. at 1076.

Similarly, plaintiff may support a § 1985(3) claim by showing that the agents of the University also acted in their individual capacities as opposed to their official capacities. *Cole v. University of Hartford*, 391 F.Supp. 888 (D.Conn.1975). Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation. Plaintiff must also allege that they acted other than in the normal course of their corporate duties. *Id.*

Plaintiff has not alleged that the defendants acted other than in the normal course of their duties. However, this may not be dispositive because it is not clear what powers are vested in the defendants in their official and individual capacities. C.R.S. § 23–60–202(j) gives the State Board the power to determine policies pertaining to community and technical colleges. However, it is not clear what powers are exercised by the other defendants in determining hiring practices and judging candidates. Thus, evidence must be heard as to the specific functions exercised by each defendant, the number of acts of discrimination, and whether there is continuing discrimination before attempting to define the constitutional scope of § 1985(3). *See, Beamon v. W. B. Saunders Co.*, 413 F.Supp. 1167, 1176 (D.Pa.1976). Therefore the motion to dismiss on this ground is denied.

Finally, defendants contend that the Eleventh Amendment bars awarding monetary damages from the defendants. The Eleventh Amendment bars impo-

sition of a liability which must be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 336, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Hansbury v. Regents of University of California*, 596 F.2d 944, 949 (10th Cir. 1979). However, the Eleventh Amendment is no bar to imposition of prospective injunctive relief, even though such relief has an ancillary effect on the state treasury. *Id.* Before this rule is applied, it must be determined that the entities against which liability is sought are in fact arms of the state and that any liability imposed must in fact be paid from the state treasury.

▪ In *Mt. Healthy City School District Board of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977) the court delineated factors to be examined in determining whether an entity is an arm of the state partaking of the states Eleventh Amendment immunity or a municipal corporation or other political subdivision to which the Eleventh Amendment does not apply. This depends upon the nature of the entity created by state law, whether it is subject to guidance from the state, whether it receives money from the state and whether it can issue bonds or levy taxes. These are factual issues which are not appropriately disposed of by a motion to dismiss.

Post *Edelman* courts have also looked at many factors in determining whether an entity is an arm of the state and if funds must come from the state treasury.[2] *See, Morrow v. Sudler*, 502 F.Supp. 1200 (D.Colo. 1980). C.R.S. § 23–60–104 indicates that the State Board controls funds that may be donated, bequeathed, appropriated or otherwise made available to the board. Thus, it is not clear whether a judgment against the defendants would necessarily come from the state treasury. *See, Morrow, supra.*

It should also be noted that the law is in flux regarding the relationship between the Eleventh Amendment and the enforcement powers granted to congress under § 5 of the Fourteenth Amendment. *Hutto v. Finney*, 437 U.S. 678, 702, 98 S.Ct. 2565, 2579, 57 L.Ed.2d 522 (J. Brennan concurring opinion). In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976) the court concluded that the Eleventh Amendment and the principles of state sovereignty which it embodies are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment. Further, in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); the court held that § 1983, a statute enacted pursuant to the Fourteenth Amendment, did intend that municipalities and other local government units be included among those persons to whom § 1983 applies. The court has not yet decided whether states are within the class of defendants liable under § 1983 for their constitutional violations. Considering the erosion of the fundamental underpinnings of *Edelman* that no statute involved authorized suit against a class of defendants which literally includes states and *Fitzpatrick's* holding that congress has plenary power to make states liable in damages when it acts pursuant to § 5 of the Fourteenth Amendment, it is open to question whether § 1983, properly construed, makes states liable for relief of all kinds, notwithstanding the Eleventh Amendment. *See, Hutto v. Finney*, 437 U.S. 678, 703, 98 S.Ct. 2565, 2580, 57 L.Ed.2d 522 (J. Brennan concurring opinion).

The unresolved factual and legal issues in combination with the current state of flux in the law justifies the continued prosecution of this suit against the defendants. What damages can be assessed against them may be decided at trial. *See, Friedman v. Weiner*, 515 F.Supp. 563 (D.Colo. 1981) (Kane, J.). Therefore the motion to

---

**2.** In *Hamilton Mfg. Co. v. Trustees of State Colleges of Colorado*, 356 F.2d 599 (10th Cir. 1966) cited by defendants, the court held that an action against the trustees was an action against the state and prohibited by the Eleventh Amendmeni. However the instant case is against the State Board for Community Colleges and is a § 1983 action. Given these two factors and the recent developments in the law, this case is not controlling.

dismiss the damage claims against defendants is denied.

## § 1983 CLAIMS

 Defendants contend that plaintiff's complaint lacks the requisite allegations of personal involvement on the part of the named individuals and thus fails to state a claim upon which relief can be granted. Personal participation is a prerequisite to a § 1983 action. *Bennett v. Passic*, 545 F.2d 1260 (10th Cir. 1976); *Hutton v. Heggie*, 454 F.Supp. 870 (D.Colo.1978); *Mingo v. Patterson*, 455 F.Supp. 1358 (D.Colo.1978). A school district or board may not be held liable under a respondeat superior theory for the discriminatory acts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; *Kite v. Kelly*, 546 F.2d 334 (10th Cir. 1976); *Moody v. City & County of Denver*, No. 79–K–1316 (D.Colo. May 22, 1980) (Kane, J.). There must be an affirmative link between the incidents of misconduct and the defendants; defendants must expressly or otherwise acquiesce in the constitutional deprivations of which complaint is made. *Kite v. Kelly*, 546 F.2d at 337. This affirmative link requirement encompasses nonfeasance as well as malfeasance. *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979).

 Plaintiff has alleged the capacity in which each defendant acted. He has also alleged in paragraphs 15 A through H, the manner in which defendants acted in violation of his civil rights. However, plaintiff has not alleged which defendants are responsible for the specific acts. Thus more specificity is required. The appropriate remedy here is leave to amend, rather than dismissal. *See, Gilbert v. School Dist. No. 50*, 485 F.Supp. 505 (D.Colo.1980). Therefore, the motion to dismiss is granted without prejudice and plaintiff is granted ten (10) days leave to amend in conformity with the view expressed in this order. Accordingly, it is

ORDERED that defendant Pikes Peak Community College Council is hereby dismissed from this action. It is further

ORDERED that plaintiff's claims for damages under Title VII are hereby dismissed. It is further

ORDERED defendant's motion to dismiss plaintiff's § 1983 and § 1985 claims are granted without prejudice. Plaintiff has ten (10) days to amend the complaint to conform with this order. It is further

ORDERED that all other grounds for dismissal are hereby denied.